# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CALVIN F. TANNEHILL,** | ) | |
| | ) | |
| **Movant/Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:**   **2:09-cv-8008-RDP-PWG** |
| | ) | **(2:07-cr-0115-RDP-PWG)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

Calvin Tannehill is in the custody of the Bureau of Prisons serving a 295-month prison sentence imposed after his conviction at trial on federal drug and weapons charges. Now *pro se*, Tannehill has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his federal sentence. (Civ. Doc. 1; Crim. Doc. 82)[1]. The motion has been fully briefed and is ripe for review. Upon consideration, the court concludes that Tannehill's § 2255 motion to vacate is due to be denied.

## I.    BACKGROUND

The Bureau of Alcohol, Tobacco, and Firearms suspected Tannehill of distributing drugs and illegally possessing a variety of guns. On March 15, 2007, ATF agents executed a search warrant on a residence at 601 Ozark Court in Birmingham the agents believed to be that of Tannehill. In that search, the agents discovered several guns, ammunition, digital scales with cocaine residue on them, and over eleven grams of crack cocaine. Later that month, a grand jury returned a three-count

---

[1] Citations to "Civ. Doc(s). ___" are to the document numbers assigned to the pleadings in the court file of this § 2255 "civil" case, 2:09-cv-8008-RDP-PWG, as reflected on the docket sheet. Citations to "Crim. Doc(s). ___" are to the document numbers in the underlying "criminal" case, 2:07-cr-0115-RDP-PWG.

indictment against Tannehill, charging him as follows: Count One charged that he was a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1); Count Two charged possession with intent to distribute 5 grams or more of a substance containing crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and Count Three charged possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Prior to trial, Tannehill moved, through counsel Glennon F. Threatt, to suppress evidence obtained in the search of the Ozark Court residence. (Crim. Doc. 30). The court held a hearing on that motion on July 16, 2007. (Crim. Doc. 44 ("Supp. Hrg.")). In support of the motion to suppress, Tannehill's counsel argued (1) that the affidavit that served as the foundation for the search warrant was insufficient, and (2) that the government, in executing the warrant, refused Tannehill's requests to show it to him. (Supp. Hrg. at 3). After considering the evidence adduced at the hearing on the motion, the court rejected both arguments. The court first concluded that the evidence sufficiently established probable cause to support issuance of the warrant. (*Id*. at 27, 30). Second, the court resolved discrepancies in the hearing testimony by finding that the ATF agent executing the warrant left a copy of it on the kitchen bar in the residence and that the warrant would not be invalidated in any event even if the agent denied Tannehill's earlier requests to furnish him with a copy. (*Id*. at 30–31). Accordingly, the court denied the motion to suppress the fruits of the search.

The case proceeded to trial, and Tannehill was convicted by the jury on all three counts. The court sentenced Tannehill to 235 months on Counts One and Two, to run concurrently with each other, and to 60 months on Count Three, to run consecutively with the sentences in Counts One and Two. Tannehill appealed to the United States Court of Appeals for the Eleventh Circuit. Still represented by Threatt, Tannehill raised three issues. He first contended that the district court

improperly denied his motion to suppress the evidence recovered in the search.  Second, Tannehill contended that the trial court erred in striking his pre-trial *pro se* motion (filed before trial) in which he requested that he be given a polygraph examination.  Third, Tannehill challenged this court's application of a two-level sentencing enhancement under U.S.S.G. § 3C1.1, based on the conclusion that Tannehill had obstructed justice by committing perjury in denying his guilt on the stand.  The Eleventh Circuit issued an opinion on December 30, 2008, rejecting each of those claims and affirming the judgment below.  *United States v. Tannehill*, 305 Fed. App'x 612 (11th Cir. 2008).  Tannehill did not seek *certiorari* review in the Supreme Court.

On February 25, 2009, Tannehill filed a *pro se* motion in this court pursuant to 18 U.S.C. § 3582(c), seeking application of an amendment to the sentencing guidelines.  (Crim. Doc. 81).  The court denied that motion.  (Crim. Docs. 86, 87).  The Eleventh Circuit ultimately affirmed that denial as well.  *United States v. Tannehill*, 344 Fed. App'x 576 (11th Cir. 2009).

On March 16, 2009, the Clerk of Court docketed Tannehill's instant motion to vacate his federal sentence pursuant to 28 U.S.C. § 2255.  (Civ. Doc. 1; Crim. Doc. 82 (hereinafter "§ 2255 Mot.")).  Tannehill also simultaneously filed a 29-page supporting brief.  (Civ. Doc. 3 ("Dft. Brief")).  In his motion and brief, Tannehill again urged that this court erred in denying his motion to suppress the evidence recovered in the search.  Tannehill also alleges that his counsel was ineffective because he failed to: (1) raise certain arguments in support of the motion to suppress the evidence from the search; (2) argue that the evidence was insufficient to support a finding that he possessed the firearms or that they were possessed in furtherance of the drug trafficking offense; (3) "raise issues of importance" on appeal as requested by Tannehill; and (4) file a "traverse" in support of the appeal.  (*See* § 2255 Mot. and Dft. Brief).  The court issued an order to show cause to the

government, which filed a response with attached exhibits, in opposition to Tannehill's § 2255 motion.  (Civ. Doc. 6 ("Gov't Brief")).

On April 29, 2009, Tannehill filed a "traverse" in reply to the government's opposition materials.  (Civ. Doc. 9 ("Dft. Reply")).  At the same time, the court docketed a motion by Tannehill seeking leave to amend his § 2255 motion, which is signed and dated April 24, 2009.  (Civ. Doc. 8 ("First Amend. § 2255 Mot.")).  In that motion, Tannehill raises three additional grounds for relief.  First, he claims that the court erred in permitting evidence of uncharged prior bad acts in violation of Federal Rule of Evidence 404(b).  Second, he contends that there was a violation at his trial of Federal Rule of Evidence 615 calling for the exclusion of witnesses from the courtroom before they testify.  Third, he claims that the court erred in interpreting 18 U.S.C. §§ 922(g), 841(b)(1) and 924(c)(1)(A)(i) in sentencing him to "consecutive mandatory terms."  The court issued another show cause order, and the government filed another response in opposition.  (Civ. Doc. 13).

Tannehill filed another motion, signed and dated September 14, 2010, seeking leave to amend his § 2255 motion.  (Civ. Doc. 23 ("Second Amend. § 2255 Mot.")).  In that motion, Tannehill raises a claim that the court erred in sentencing him "utilizing an incorrect [Presentence Investigation Report]" and should have applied Amendment 709 to the sentencing guidelines and that trial counsel was ineffective for failing to raise the error.  The court granted that motion, for leave, and the government filed another supplemental response, asserting that the claims raised in Tannehill's new motion are time barred under 28 U.S.C. § 2255(f) and are otherwise due to be denied. (Civ. Doc. 28).  In a separate "Notice of Supplemental Authority and Memorandum of Law," signed and dated October 5, 2010, Tannehill raises a variety of other claims asserting that the court committed various errors in sentencing him, in violation of both the Guidelines and his jury trial

4

rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Ring v. Arizona*, 536 U.S. 584 (2002); and *United States v. Booker*, 543 U.S. 220 (2005).  (Civ. Doc. 26).  Tannehill also filed a reply. (Civ. Doc. 29).  Tannehill's § 2255 claims are thus ripe for review.

## II.      DISCUSSION

### A.      Title 18 U.S.C. § 2255

Section 2255 authorizes a federal prisoner to move the court of conviction to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States.  28 U.S.C. § 2255(a).  Such a motion is subject to heightened pleading requirements mandating that the motion specify all the grounds of relief and state the facts supporting each ground.  *See* Rules 2(b)(1) & (2), Rules Governing § 2255 Proceedings; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994).  When a § 2255 motion is filed, it is subject to preliminary review, at which time the court is authorized to dismiss the motion summarily "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief."  Rule 4(b), Rules Governing § 2255 Proceedings.  A § 2255 movant is not entitled to a hearing or post–conviction relief when his claims fail to state a cognizable claim or amount to only conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.  *See Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001).

### B.      The Fourth Amendment Claim

Tannehill devotes a substantial portion of his voluminous and frequent submissions in this court to his argument that his conviction is unconstitutional because it is based upon evidence— specifically, the guns and drugs found in the Ozark Court residence—recovered in a search that

allegedly violated the Fourth Amendment.  However, Tannehill filed a motion prior to his trial seeking to suppress that evidence on Fourth Amendment grounds, asserting that the search warrant was not issued based on probable cause and that the agent executing the warrant failed to show it to him.  The court held a hearing on the motion and took testimony from Tannehill and ATF Agent Lamar English, who both obtained and executed the warrant.  The court then denied the motion to suppress as to the search.  Tannehill challenged that denial on direct appeal, and the Eleventh Circuit affirmed this court's findings and conclusions on the merits.

This court need not revisit issues raised in a § 2255 motion that have been rejected at trial and on direct appeal.  *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).  Further, where a defendant was provided with an opportunity for full and fair litigation of his Fourth Amendment claim prior to making this collateral challenge, he may not raise such a substantive claim in a § 2255 proceeding.  *See Stone v. Powell*, 428 U.S. 465 (1976) (holding that such rule applies to state prisoners seeking habeas relief under 28 U.S.C. § 2254); *United States v. Johnson*, 457 U.S. 537, 562 n. 20 (1982) (stating in dicta that the rule of *Stone* applies to "analogous federal cases under 28 U.S.C. § 2255"); *United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003); *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993); *United States v. Hearst*, 638 F.2d 1190, 1196 (9th Cir. 1980); *Bailey v. United States*, 2011 WL 2270183, *2–3 (N.D. Fla. 2011); *Mosquera Estupian v. United States*, 2007 WL 2669198, *4 (M.D. Fla. 2007).  Tannehill was afforded a full and fair opportunity to litigate his Fourth Amendment claim, and he did so, albeit unsuccessfully.  The court will not further revisit or address that substantive issue.[2]  This claim is due to be denied.

---

[2] Although Tannehill's counsel did move to suppress the evidence from the search as violative of the Fourth Amendment, Tannehill also argues that his attorney provided constitutionally ineffective assistance in his pursuit of that motion.  That Sixth Amendment claim is addressed

**C.      Ineffective Assistance of Counsel**

Tannehill next raises numerous claims alleging that his attorney was ineffective.  The Sixth

Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence."

U.S. Const. Amendment VI.  "It has long been recognized that the right to counsel is the right to

effective assistance of counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970); *see also*

*Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).  A claim of ineffective assistance of counsel can be

established upon a showing that the (1) "counsel's performance was deficient," and (2) "that the

deficient performance prejudiced the defense" because the "errors were so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable."  *Strickland v. Washington*, 466 U.S. 668, 687

(1984).  In a habeas corpus action, the petitioner generally carries the burden to establish both

components.  *Lawhorn v. Allen*, 519 F.3d 1272, 1293 (11th Cir. 2008) (citing *Atkins v. Singletary*,

965 F.2d 952, 958–59 (11th Cir. 1992)).

As the Eleventh Circuit has explained:

> To establish a constitutionally deficient performance, the defendant
> must "identify the acts or omissions ... that are alleged not to have
> been the result of reasonable professional judgment" to "show that
> counsel's representation fell below an objective standard of
> reasonableness" and "outside the wide range of professionally
> competent assistance." *Strickland*, 466 U.S. at 687, 690.  The "highly
> deferential" reviewing court must "indulge a strong presumption that
> counsel's conduct falls within the wide range of reasonable
> professional assistance," *id.* at 689, and recognize that cases
> warranting the grant of habeas relief based on an ineffective
> assistance claim "are few and far between."  *Chandler v. United
> States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quotation and
> citation omitted). ... "[T]he defendant must overcome the
> presumption that, under the circumstances, the challenged action
> 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at

below.

> 689. ... Because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002), we must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

*Lawhorn*, 519 F.3d at 1293–94.

Once constitutionally deficient performance is established, the petitioner must also prove prejudice. To do so the petitioner must convince the court "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. While a petitioner need not show that counsel's deficient conduct "more likely than not altered the outcome of the case," it is not enough for the petitioner to show that counsel's errors merely had "some conceivable effect on the outcome of the proceeding." *Id.*, 466 U.S. at 693. A court may decline to reach the performance prong if convinced that the prejudice prong cannot be satisfied in any event. *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010). Indeed, a court may dispense altogether with analysis of the performance prong if it determines that the prejudice prong cannot be satisfied.

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims

not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697; *See Rose v. McNeil*, 634 F.3d 1224, 1242 (11th Cir. 2011).

### 1.    Alleged Failures Associated with the Motion to Suppress

Although Tannehill's counsel moved to suppress the evidence from the search as violative of the Fourth Amendment, Tannehill argues that his attorney provided ineffective assistance in pursuing that motion because he failed to raise certain arguments and to fully investigate and illuminate a laundry list of factual issues Tannehill asserts are relevant.  To be sure, Sixth Amendment claims arising from failures associated with motions to suppress based on the Fourth Amendment are not barred from collateral challenge under the rule of *Stone v. Powell*.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375–77 (1986).

Tannehill has argued that his counsel was ineffective because he failed to make certain suppression arguments to show (1) that the search of the Ozark Court residence violated the Fourth Amendment because the affidavit allegedly failed to establish probable cause to issue the search warrant and (2) that the agent executing the warrant violated Rule 41 of the Federal Rules of Criminal Procedure by refusing Tannehill's requests to see the warrant and in other particulars.  In order to show prejudice on such claims, Tannehill must show at a minimum both (1) that his underlying Fourth Amendment/Rule 41 suppression claim is meritorious and (2) that there is a reasonable probability that he would not have been convicted without the excluded evidence.  *See Kimmelman*, 477 U.S. at 375; *Green v. Nelson*, 595 F.3d 1245, 1251–52 (11th Cir. 2010).

Although this claim is not barred by the rule of *Stone v. Powell*, the court notes that, although Tannehill testified at his suppression hearing that he lived at the Ozark Court residence at the time

of the search (Crim. Doc. 44 at 20), he unambiguously disavowed that at the trial.  (Crim. Doc. 77, Trial Trans. Vol. II, at 228).  Instead he claimed merely that he would "go there at times" to play video games with "a bunch" of friends.  (*Id.*)  The government predictably attempted to impeach Tannehill with his former sworn suppression hearing testimony that he resided at the house.  *See United States v. Quesada-Rosadal*, 685 F.2d 1281, 1283 (11th Cir. 1982).  Tannehill re-affirmed that had never lived there, suggesting that he had "misunderst[ood] the question" at the suppression hearing. (*Id.* at 229).  Likewise, Tannehill has not alleged in his § 2255 motion that he resided at the house, nor has he alleged facts to otherwise explain away his sworn trial testimony that he was nothing more than an occasional social guest.  Instead, he has clearly sought in this proceeding to distance himself from the premises, referring to them repeatedly as "the residence," "this residence," or by the street address, not as "my" or "his" residence, house, property, or home.  (*See, e.g.*, Crim. Doc. 3 at 3, 4).  He also now emphasizes that neither the lease nor the utilities are in his name, further claiming that it "was never established if Petitioner was in control or ownership of this residence."  (*Id*. at 17).

In order to have standing to contest the legality of a search, a defendant has to show that he had a legitimate expectation of privacy in the premises.  This is so even where government has charged the defendant with unlawful possession of items found on the premises.  *See United States v. Salvucci*, 448 U.S. 83 (1980); *Rakas v. Illinois*, 439 U.S. 128 (1978).  Tannehill has been changing his relationship to the searched premises as the wind blows.  First, he claimed at the suppression hearing that he lived at the residence at the time of the search.  That motion having failed, he told the jury just the opposite: that he did not live at the house, but rather just played video games there a few times.  That was an obvious effort to distance himself from the drugs and guns found inside.

10

After being found guilty, he argued on direct appeal that this court erred in denying his motion to suppress, thus (at least implicitly) re-assuming his original position from the suppression hearing that he had a legitimate expectation of privacy in the premises.  Losing on that appeal, Tannehill has now again reversed course in this § 2255 proceeding by arguing that he has no material connection to the residence and that the government failed to show otherwise, while simultaneously arguing that his Fourth Amendment rights were violated by the search of those very same premises.  In assessing whether Tannehill has standing to contest the validity of the search, the court may consider the assertions that Tannehill now makes in his § 2255 motion and his trial testimony affirmatively claiming to have been merely a social visitor at the Ozark Court residence on some unspecified occasions.  *Cf. United States v. Quiroz-Carrasco*, 565 F.2d 1328, 1330 (5th Cir. 1979) (in passing on the correctness of a district court's denial of a motion to suppress, the court of appeals may consider the evidence adduced at trial, even though that evidence was not presented at the pretrial suppression hearing); *see also* 6 W. LaFave, *Search and Seizure* § 11.7(d) (4th ed. 2004).  Here, one of the arguments that Tannehill has staked out is that he was not the owner, resident or tenant of the Ozark Court property.  If that is the case, he lacks a protected privacy interest in the premises which is necessary to challenge the search in the first place, *see Minnesota v. Carter*, 525 U.S. 83 (1998); *United States v. Sweeting*, 933 F.2d 962, 964 (11th Cir. 1991); *United States v. Jones*, 184 Fed. App'x 943 (11th Cir. 2006); and that would necessarily invalidate all of his underlying suppression arguments, thus precluding prejudice under *Kimmelman*.  *See Thomas v. Newsome*, 821 F.2d 1550, 1552 (11th Cir. 1987).  Nonetheless, given that Tannehill has made other (inconsistent) arguments, and because there was other evidence at trial suggesting that Tannehill lived at the residence, the

11

court will also assume for the sake of argument that Tannehill had standing to contest the search. But even entertaining that assumption, his claims all still fail on other grounds.

> a.   **Failure to Attack the Affidavit or Show Facts Demonstrating Lack of Probable Cause**

Tannehill first contends that counsel was ineffective because he failed to bring "to the court's attention" the affidavit sworn by ATF Agent Lamar English, submitted to this court to obtain the search warrant for the Ozark Court residence. (Civ. Doc. 3 at 7). Tannehill contends that the affidavit is missing pages 1, 7, and 13, which Tannehill claims rendered the warrant "invalid." (*Id.* at 4, 7). Tannehill faults his counsel for allegedly failing to present a copy of the affidavit to the court on the motion to suppress and show that the pages were missing. However, the affidavit in question was, in fact, filed by the government as an exhibit to its opposition to the motion to suppress. (Crim. Doc. 38-1). The pages cited by Tannehill as missing are included in that exhibit. They are also included in the affidavit attached to the original warrant, which has been maintained in the Clerk's office upon its return to Magistrate Judge Armstrong of this court, who issued it. [3] Tannehill has not shown any deficient performance or prejudice on this claim, which is thus due to be denied.

Tannehill also argues that his counsel was ineffective because he failed to emphasize certain aspects of the contents of the affidavit submitted by Agent English to obtain the search warrant. Tannehill characterizes the affidavit as "bare boned" as it related to criminal activity at the Ozark Court residence and insufficient to establish probable cause. He emphasizes that the confidential

---

[3]Tannehill has taken to urging that Judge Armstrong did not actually issue a search warrant for the Ozark Court residence at all. That argument is simply frivolous. A copy of the subject search warrant was signed by the executing officer and was returned to the court with an inventory list. A copy of the returned warrant, maintained in the clerk's office is attached hereto as Exhibit A.

informants ("CIs") who are cited in the affidavit as having provided information to Agent English had stated that Tannehill had conduct his drug activities out of a residence at a different residence at 324 Macon Street in Birmingham, several blocks away, and that they did not state that they had themselves ever been to the Ozark Court address.  Tannehill further states that one or more of the informants testified at trial that they had not been to the Ozark Court residence.  Additionally, Tannehill complains that one of the confidential informants from the warrant affidavit did not testify at his trial, rendering information she provided as hearsay.

As noted previously, this court reviewed Agent English's affidavit and found that it was sufficient on its face to establish probable cause.  Nothing presented at the suppression hearing or at trial undercuts that determination.  The Eleventh Circuit affirmed this court's suppression ruling on appeal.  Tannehill's claims alleging that his counsel should have raised other arguments to oppose the sufficiency of the affidavit do not establish that counsel's performance was deficient or that Tannehill suffered prejudice under *Strickland*.  Indeed, in making these claims, Tannehill seems to be unaware of two important principles of search and seizure law.  First, probable cause to issue a search warrant can be based upon hearsay information, provided that a sufficient showing has been made as to the declarant's veracity and basis of knowledge or there has been sufficient independent corroboration of the information by law enforcement.  *See United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002).  Second, even if a search warrant affidavit contains seemingly reliable information from an informant that turns out to be erroneous (whether the informant knows it to be false or not), that does not vitiate the probable cause determination underlying a search warrant provided that police did not convey the information to the magistrate recklessly or in bad faith.  *See Illinois v. Rodriguez*, 497 U.S. 177, 184 (1990); *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

13

It is true that the affidavit here indicates that informants engaged in drug transactions with Tannehill at the Macon Street residence rather than at the Ozark Court residence. However, the informants told Agent English that they had been advised that Tannehill had recently moved to the Ozark Court residence because he lost his lease at the Macon Street house. Further, Agent English states in his affidavit that he and another agent performed surveillance of the Ozark Court residence three days before they applied for the warrant and corroborated that a vehicle registered to Tannehill was parked in the driveway, and they saw him open the front door there. In this case, the search warrant affidavit was sufficient to establish probable cause, and even Tannehill's recent claims fail to establish that counsel could have established otherwise. Accordingly, those claims are due to be denied.

### b.    Refusal to Show Tannehill the Search Warrant

One of Tannehill's primary claims is that counsel was ineffective for failing to make particular arguments to support that the search was invalid because ATF Agent English, when executing the warrant, refused to show Tannehill a copy of it upon his request. Specifically, Tannehill contends counsel failed to specifically argue that Agent English's refusal violated Rule 41 of the Federal Rules of Criminal Procedure, which provides in relevant part:

> **Receipt.** The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

Rule 41(f)(1)(C), Fed. R. Crim. P.[4]  Although counsel did argue specifically that the evidence from the search was due to be suppressed based on the agent's refusal to show Tannehill the warrant, Tannehill emphasizes that his counsel was ineffective because he did not cite Rule 41 or make arguments based upon it.

At the suppression hearing, Tannehill testified that he repeatedly and specifically asked Agent English to show him the search warrant.  Agent English testified that he did not recall whether Tannehill had made such requests.  Agent English further stated, however, that before he left the residence, he put a copy of the warrant with a handwritten return on a bar between the kitchen and living room.  (Crim. Doc. 44 at 9–20).  The court credited the testimony of Agent English that he had left a copy of the warrant at the conclusion of the search, and the court further ruled that, even if English had otherwise refused to show Tannehill a copy of the warrant, such still would not have invalidated the warrant or the search.  (*Id.* at 30–31).

In support of this claim, Tannehill relies heavily upon *United States v. Gantt*, 194 F.3d 987, 1006 (9th Cir. 1999), wherein the Ninth Circuit held that evidence from a search was subject to suppression because federal agents "deliberately" violated the applicable provision of Rule 41 by failing to show the defendant a copy of the warrant at the outset of a search when the defendant asked to see it.  In so doing, the Ninth Circuit interpreted Rule 41 as requiring that, absent exigent circumstances, agents must serve the warrant at the outset of the search on persons present at the search of their premises.  *Id.* at 1001, 1005.  The Ninth Circuit based that ruling on the proposition

---

[4]Tannehill repeatedly argues that the failure to show him the warrant violated Federal Rule of Criminal Procedure Rule 41*(d)*.  While the relevant receipt provision was formerly in Rule 41(d), it was moved to Rule 41(f) pursuant to amendments to the rule in 2002.  *See* Advisory Committee Notes, 2002 Amendments to Rule 41; *United States v. Neal*, 182 Fed. App'x 366, 371 n. 4 (5th Cir. 2006).

"that the essential functions of the search warrant include assuring the subject of the search that her privacy is invaded only under a legal warrant and notifying her of the extent of the officer's authority." *Id.* at 1001.  Such concerns, the court noted, are like those underlying the rule that police generally must knock and announce their presence when executing a search warrant for a dwelling, which is designed primarily to prevent a breach of the peace.  *Id.* at 1002; *also see generally Wilson v. Arkansas*, 514 U.S. 927 (1995) (discussing the "knock-and-announce" rule as applied to the Fourth Amendment).

Tannehill's reliance on *Gantt*, however, is unavailing.  Counsel did raise the refusal of Agent English to show Tannehill the search as a basis for suppressing the evidence from the search.  (Crim. Doc. 44 at 3).  It does appear that such argument was based on a violation of "procedural due process," rather than on Rule 41(f), Fed. R. Crim. P.  (*Id.*)  However, counsel's failure to cite Rule 41 or the Ninth Circuit's decision in *Gantt* did not render counsel's performance deficient.  The *Gantt* decision is obviously not binding in this circuit.  Tannehill does not cite, and the court's research has not disclosed, any case where the court of appeals in this circuit has required or upheld the suppression of evidence based on a violation of the failure to timely furnish a defendant with a copy of the warrant under Rule 41.

Rather, the only binding case on point decided in this circuit appears to be *United States v. Marx*, 635 F.2d 436 (5th Cir. Unit B Jan. 1981)[5], which affirmed the *denial* of a motion to suppress

---

[5]The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). After that date, however, only the decisions of the continuing Fifth Circuit's Administrative Unit B are binding on this circuit, while Unit A decisions are merely persuasive.  *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982). *See generally*, Thomas E. Baker, *A Primer on Precedent in the Eleventh Circuit*, 34 Mercer L.Rev. 1175 (1983).

based on the failure to serve a copy of the warrant until the day after the search occurred, where the officials executing the search did not themselves have the warrant with them.  In so doing, the former Fifth Circuit explained that violations of the provisions now found in Rule 41(f)(1)(C)

> are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice or that non-compliance with the rule was intentional or in bad faith.  *United States v. Diecidue*, 603 F.2d 535, 562 (5th Cir. 1979), cert. denied, 445 U.S. 946 (1980); *United States v. Wilson*, 451 F.2d 209, 214 (5th Cir. 1971), cert. denied, 405 U.S. 1032 (1972); *United States v. Dauphinee*, 538 F.2d 1, 3 (1st Cir. 1976); *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971).  Failure to deliver a copy of the search warrant to the party whose premises were searched until the day after the search does not invalidate a search in the absence of a showing of prejudice.  *United States v. Cafero*, 473 F.2d 489, 499 (3d Cir. 1973), cert. denied, 417 U.S. 918 (1974); *United States v. McKenzie, supra,* 446 F.2d at 954.
>
> In order to show prejudice in this context, a defendant must show that because of the violation of Rule 41 he was subjected to a search that might not have occurred or would not have been so abrasive had the rule been followed. *United States v. Burke*, 517 F.2d 377, 386 (2d Cir. 1975).  Appellants have shown neither type of prejudice.  Further, their contention that the actions of the DEA agents constituted a deliberate and intentional disregard of Rule 41(d) is without merit.

*Marx*, 635 F.2d at 441.

Tannehill has made no suggestion that he can show prejudice as defined in *Marx*.  He does assert, though, that a suppression argument by counsel that specifically relied upon Rule 41 would have prevailed because Agent English refused his numerous requests to see the warrant, which the agent undisputedly possessed at that time.  Such a refusal, Tannehill argues, constitutes a deliberate, bad-faith violation of Rule 41 for purposes of *Marx*, under the Ninth Circuit's reasoning in *Gantt*. For reasons explained below, however, Tannehill has not shown there was necessarily even a violation of Rule 41(f)(1)(C) at all, much less that any violation that might have occurred was

deliberate or in bad faith. Moreover, the court concludes that even assuming that there was a violation of the rule, the evidence still would not have been subject to suppression.

Since *Gantt* and *Marx*, the Supreme Court has stated that "[n]either the Fourth Amendment nor Federal Rule of Criminal Procedure 41 impose ... a requirement" "that the executing officer must present the property owner with a copy of the warrant before conducting his search." *United States v. Grubbs*, 547 U.S. 90, 98–99 (2006) (citing *Groh v. Ramirez*, 540 U.S. 551, 562 n. 5 (2004)). Rather, Rule 41 provides by its terms that the officer executing the warrant must "give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken" "*or*" the officer must "leave a copy of the warrant and receipt at the place where the officer took the property." Rule 41(f)(1)(C), Fed. R. Crim. P. (emphasis added); *see also Groh*, 540 U.S. at 562 n. 5. As the Court further explained in *Grubbs*:

> "The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is ... evidence that the requirement of particular description does not protect an interest in monitoring searches." *United States v. Stefonek*, 179 F.3d 1030, 1034 (7th Cir. 1999) (citations omitted). The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, ex ante, the "deliberate, impartial judgment of a judicial officer ... between the citizen and the police," *Wong Sun v. United States*, 371 U.S. 471, 481–482 (1963), and by providing, ex post, a right to suppress evidence improperly obtained and a cause of action for damages.

547 U.S. at 99. *Grubbs* and *Groh* have called into question both the result in and the reasoning underlying *Gantt*, as even the Ninth Circuit has recognized. *See United States v. Williamson*, 439 F.3d 1125, 1132 n. 4 (9th Cir. 2006); *see also State v. Breuer*, 808 N.W.2d 195, 199 (Iowa 2012); *State v. Olliver*, 254 P.3d 883, 890 (Wash. App. Div. 1 2011); *People v. Ellison*, 773 N.Y.S.2d 860, 868 & n. 5 (N.Y. Sup. 2004).

Tannehill emphasizes that he asked Agent English about "half a dozen" times to show him the search warrant and that Agent English refused.  However, it is undisputed that Tannehill was not at the Ozark Court residence when he was apprehended by police on an outstanding state arrest warrant.  Rather, Tannehill was brought to the residence by law enforcement as they executed the search warrant.[6]  Moreover, the court credited Agent English's suppression hearing testimony that he did, in fact, leave a copy of the warrant in the residence at the conclusion of the search, which is the alternative means of service specified in Rule 41(f)(3).  The Supreme Court's statements in *Groh* and *Grubbs* tend to support the proposition that doing just that is sufficient to satisfy the requirements of the rule, even if there are no exigent circumstances and the premises owner is present.  And this point lends further support to the conclusion that even a potential violation of Rule 41(f)(3) was not in bad faith and thus would not call for suppression under *Marx*.  To the extent that *Gantt* suggests to the contrary, this court declines to follow its rationale.

But even further assuming that Agent English's refusal to show Tannehill the warrant did violate Rule 41, the evidence would still not be subject to suppression, even in the Ninth Circuit.

---

[6]The court notes that Tannehill also does not allege that he advised Agent English at the scene that he, Tannehill, was claiming to be the owner or occupant of the Ozark Court residence such that he might have been deemed "the person ... from whose premises, the property was taken" for purposes of Rule 41(f)(1)(C).  In fact, as noted previously, Tannehill expressly denied at trial that he lived at the residence at the time of the search.  Nor has Tannehill claimed in connection with his § 2255 motion that he actually lived at the residence at the time of the search.  If anything, as noted above, he has taken the contrary position.  By the plain terms of Rule 41(f)(1)(C), if Tannehill was not "the person ... from whose premises, the property was taken," he could have had no right to see the warrant, even with an express demand.  Agent English testified at trial that it was "unclear at the time" of the search whether the residence "belonged" to Tannehill.  (Crim. Doc. 76, Trial Trans. at 54).  Given that Tannehill was not found at the residence and that he does not claim that he asserted to Agent English that he lived there, at the very least it was somewhat unclear whether Tannehill was a person entitled under Rule 41(f)(3) to be served with the warrant, even under the Ninth Circuit's interpretation in *Gantt*.  Thus, even under Tannehill's "version" of the facts any violation of the Rule could not be properly characterized as "deliberate" or in "bad faith."

In *United States v. Hector*, 474 F.3d 1150 (9th Cir. 2007), the court was faced with an appeal by the government that challenged a district court's decision to suppress evidence based on the failure of police to provide the defendant with a copy of the search warrant. Recognizing that the Supreme Court had recently held in *Hudson v. Michigan*, 547 U.S. 586 (2006), that suppression was not required based upon a violation the Fourth Amendment for failure to abide by the "knock and announce" rule, the *Hector* court held that suppression was similarly improper where the police violated the defendant's rights by failing to serve him in a timely fashion with the search warrant. *Hector*, 474 F.3d at 1154–55. In both situations, the court reasoned, the constitutional violation was "not the unattenuated but-for cause of obtaining the evidence." *Id.* at 1154. The court recognized, "'Whether [the violation] had occurred *or not*, the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house.'" *Id.* (quoting *Hudson*, 547 U.S. at 592 (emphasis supplied in *Hudson* and retained in *Hector*)). That is equally true here. Accordingly, even if a violation of Rule 41 occurred (and, to be clear, the court finds there was no such violation here), the evidence would not be subject to suppression. Tannehill has failed to show both deficient performance and prejudice associated with counsel's failure to raise suppression arguments based on Rule 41.[7]

_____

[7]Tannehill also contends that counsel was ineffective for failing to raise an argument that the government violated Rule 41 because the officer executing the warrant allegedly did not sign the return and provide a copy of the inventory of the items recovered in the search to the magistrate judge designated on the warrant. *See* Rule 41(f)(1)(D), Fed. R. Crim. P. However, the original search warrant, which was issued by Magistrate Judge Armstrong of this court and is kept on file in the clerk's office, contains a properly signed return with an inventory. There was no violation of Rule 41(f)(1)(D), and counsel was not deficient for failing to argue the point. Moreover, even assuming for the sake of argument that Rule 41(f)(1)(D) was violated, the court would conclude that the exclusionary rule would still not apply based on the reasoning in *Hector*.

### c.        Failure to Obtain Suppression Hearing Tape Recording

Tannehill also contends that counsel was ineffective because he failed to file a motion to obtain the tape recording of the suppression hearing.  Tannehill alleges that, at one point during agent English's testimony, he allegedly stated, "I do not know if Calvin Tannehill is in 'control' of this residence or in 'ownership' of this residence." (Civ. Doc. 3 at 6).  Tannehill further alleges that during the hearing, the undersigned stated to agent English, "The only thing that confuses me about this whole thing is, if you had a search warrant why didn't you show it to him." (*Id*.)  Tannehill asserts that those statements have been omitted from the hearing transcript. (*Id*. at 7).  Tannehill contends that he mentioned this fact to his attorney, and that counsel said he would listen to the tapes, but that counsel failed to do so or file a motion for the tapes.

In his affidavit, counsel denies being aware that any statements were made at the hearing that do not appear in the transcript.[8]  The court, solely for the sake of argument, will assume that the remarks cited by Tannehill were made, despite their absence from the official transcript of the hearing. (*See* Crim. Doc. 44).  Even so, Tannehill fails to explain why it matters.  Indeed, the agent's alleged statement sounds like a plausible explanation for why he might not have complied with a demand by Tannehill to see the search warrant at the outset of the search.  As noted above, Tannehill would not have been entitled to view the warrant unless he was "the person ... from whose premises, the property was taken."  Rule 41(f)(1)(C).  Nor is it relevant whether the court made the alleged statement to English about showing Tannehill a copy of the warrant.  The court's ruling in denying the motion to suppress is clearly stated in the transcript.  (See Crim. Doc. 44 at 30–31).  The court

---

[8]There is good reason for counsel to take this position post-habeas filing.  The remarks Tannehill contends were made were, in fact, not made.  As an officer of this court, counsel cannot take a false position, even while zealously representing his client.

held that the warrant was supported by probable cause, that a copy of the warrant was left at the residence, and that, even assuming the agent had refused Tannehill's prior requests to view a copy of the warrant, such would not invalidate the warrant or the search. (*Id.*) None of that is affected by the statements cited by Tannehill. This claim is due to be denied, as Tannehill fails to show either deficient performance or prejudice.[9]

### 2.     Failure to Argue that the Evidence was Insufficient

Tannehill contends that his counsel was ineffective because he failed to make arguments that the evidence was insufficient to sustain his convictions. The court would note that counsel did move under Federal Rule of Criminal Procedure 29 for a judgment of acquittal at the end of the government's case (Crim. Doc. 77, Trial Transcript at 203) and renewed that motion following the close of all evidence. (*Id.* at 244). The court summarily denied those motions. A Rule 29 motion for judgment of acquittal is the procedural vehicle by which the defense tests the legal sufficiency of the evidence. Accordingly, the record shows that counsel did challenge the sufficiency of the evidence.

Nonetheless, the court will address Tannehill's claims alleging that his counsel was ineffective on the theory that he failed to raise certain particular arguments in support of the motion for judgment acquittal. A conviction is sufficiently supported where the record evidence, viewed in the light most favorable to the government, and drawing all reasonable factual inferences in favor

---

[9]Tannehill has also filed a motion asking the court to give him access to the original recording of the suppression hearing. (Civ. Doc. 33). For the same reasons that the associated ineffective assistance claim is due to be rejected, Tannehill's motion seeking the tape is likewise due to be denied.

of the jury's verdict, would allow a reasonable trier of fact to find guilt beyond a reasonable doubt

on each element of the offense.  *United States v. Beckles*, 565 F.3d 832, 840–41 (11th Cir. 2009).

To establish Tannehill's guilt on the count alleging possession of a controlled substance with

intent to distribute, the government was required to show (1) knowledge; (2) possession of a

controlled substance; and (3) intent to distribute.  *United States v. Garcia-Bercovich*, 582 F.3d 1234,

1237 (11th Cir. 2009); *United States v. Baker*, 432 F.3d 1189, 1233 (11th Cir. 2005).  "Possession

can be actual or constructive and can be shown through direct or circumstantial evidence."  *United*

*States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006).  "Constructive possession exists where

the defendant had dominion or control over the drugs or over the premises where the drugs were

located."  *Id.*

"To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove three

elements: '(1) that the defendant was a convicted felon, (2) that the defendant was in knowing

possession of a firearm, and (3) that the firearm was in or affecting interstate commerce.'"  *Id.*, 565

F.3d at 841 (quoting *United States v. Deleveaux*, 205 F.3d 1292, 1296–97 (11th Cir. 2000)).  The

Eleventh Circuit has explained:

> Possession of a firearm may be either actual or constructive.  *United*
> *States v. Iglesias*, 915 F.2d 1524, 1528 (11th Cir. 1990).
> Constructive possession of a firearm exists when a defendant does not
> have actual possession but instead knowingly has the power or right,
> and intention to exercise dominion and control over the firearm. See
> [United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004)]
> (citations omitted).   A defendant's presence in the vicinity of a
> firearm or mere association with another who possesses that gun is
> insufficient; however, at the same time, "[t]he firearm need not be on
> or near the defendant's person in order to amount to knowing
> possession." *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir.
> 2004) (citing *United States v. Winchester*, 916 F.2d 601, 603–04
> (11th Cir. 1990)) (holding that a firearm found behind his couch

23

> when the defendant was not home was sufficient for a conviction under 18 U.S.C. § 922(g)).  As long as the Government proves, through either direct or circumstantial evidence that the defendant (1) was aware or knew of the firearm's presence and (2) had the ability and intent to later exercise dominion and control over that firearm, the defendant's constructive possession of that firearm is shown. *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009).

*United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011).

To establish a violation of 18 U.S.C. § 924(c)(1)(A)(i), the government must show that the defendant's "possession" of the firearm was in "in furtherance of" the drug crime.  To prove that, the government must establish that "the firearm helped, furthered, promoted, or advanced the drug trafficking." *United States v. Mercer*, 541 F.3d 1070, 1076 (11th Cir. 2008) (quoting *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002)).  There must be "a showing of some nexus between the firearm and the drug selling operation," *id.* (quoting *Timmons*, 283 F.3d at 1253), which may be established "by the kind of drug activity that is being conducted, accessibility of the firearm, the type of firearm, whether the firearm is stolen, the status of the possession (legitimate or illegal), whether the firearm is loaded, proximity of the firearm to the drugs or the drug profits, and the time and circumstances under which the firearm is found." *Id.* (citing *Timmons*, 283 F.3d at 1253).

At trial, Tannehill stipulated that he had a previous felony conviction.  Agent English testified that when the agents executed the search warrant for the Ozark Court residence, they recovered a Marlin 30/30 lever-action rifle and two Norinco assault rifles were found in a bedroom closet, and a Colt AR-15 loaded with a 50-round magazine was found under a sofa in another bedroom, used as an entertainment or game room at the Ozark Court house.  The evidence showed that the weapons were manufactured outside of Alabama and thus had traveled in interstate commerce.  Agents also recovered several boxes of ammunition throughout the house, as well as

approximately eleven grams of crack cocaine, marijuana, four boxes of sandwich bags, three sets of scales with what appeared to be cocaine residue, and other drug paraphernalia.  Agent English further testified that the amount of crack recovered along with the scales and other paraphernalia were indicative of distribution, rather than just personal use.  Agent English testified that he had observed Tannehill at the residence on the day of the search, as well as on two other occasions.  He also saw a vehicle registered to Tannehill parked at the house on multiple occasions. The search yielded a cellular telephone that had as its "wallpaper" a photo of Tannehill holding a weapon that either was, or was similar to, the Colt AR-15.  During the search, police also recovered mail addressed to Tannehill.

The government also provided testimony from two additional witnesses.  First, Angela Marie Davis testified that she had purchased powder crack cocaine from Tannehill on about 10 to 15 occasions prior to the execution of the search warrant.  She further stated that Tannehill had been armed with a pistol those times and he had once showed her several rifles in the back of his vehicle. Her brother, Jesse Brian Davis, testified that he had also purchased cocaine from Tannehill on about 50 occasions.  He further testified that Tannehill had taken him to the house on Ozark Court; that Tannehill lived there; and that he (Jesse Davis) had seen Tannehill in his living room weigh crack cocaine on the scales recovered in the search and package it for sale.  Jesse Davis also testified that he had seen Tannehill with the AR-15 rifle recovered in the search and that he had seen the other three weapons in Tannehill's closet before he had moved to the house on Ozark Court.  The evidence presented at trial was more than sufficient to sustain Tannehill's convictions on all three counts.  *See Mercer*, 541 F.3d at 1076–77; *Perez*, 661 F.3d at 577; *United States v. Faust*, 456 F.3d 1342, 1346 (11th Cir. 2006).

25

Tannehill nonetheless complains that counsel should have argued that the evidence was insufficient to establish that he possessed the firearms because the government did not introduce evidence that Tannehill's fingerprints were on them. However, defense counsel did bring out to the jury that the government had not obtained evidence showing that Tannehill's fingerprints were on the weapons. Further, such evidence is not required to establish possession, which can be shown by other types of circumstantial or direct evidence. *See United States v. Pruitt*, 300 Fed. App'x 853, 854–55 (11th Cir. 2008); *United States v. Williams*, 146 Fed. App'x 425 (11th Cir. 2005); *United States v. Brown*, 634 F.3d 435, 439 (8th Cir. 2011); *United States v. Patayan Soriano*, 361 F.3d 494, 508 (9th Cir. 2004).

Tannehill also argues that counsel was ineffective in failing to argue that his conviction for possession of the firearms in furtherance of the drug crime was invalid under *Bailey v. United States*, 516 U.S. 137 (1995), and *United States v. King*, 73 F.3d 1564 (11th Cir. 1996). When those cases were decided, § 924(c)(1)(A) provided for criminal liability only where the defendant "use[d] or carrie[d] a firearm" "during and in relation to any ... drug trafficking crime." *See United States v. Miranda*, 666 F.3d 1280, 12282 (11th Cir. 2012). In *Bailey*, the Supreme Court held that mere possession of a firearm in the vicinity of a drug transaction did not constitute "use" for purposes of § 924(c)(1)(A); rather, to show "use," the government had to establish "active employment of the firearm." 516 U.S. at 143–45. In *King*, the Eleventh Circuit applied *Bailey* to "hold that a firearm found between a mattress and a box spring in a bedroom next to the room where most of the drug trafficking crime occurred does not constitute  the type of active employment of the firearm' that is necessary for a conviction under the 'use' prong of § 924(c)(1)." *King*, 73 F.3d at 1567. Subsequently, however, Congress amended § 924(c)(1) in response to *Bailey* so as to penalize a

defendant "who, in furtherance of a [a drug trafficking crime], possesses a firearm," 18 U.S.C. § 924(c)(1)(A). *See Miranda*, 666 F.3d at 1282–83. Because Tannehill was convicted of "possessing" the firearms "in furtherance of" the drug crime, not with "using" them "during and in relation to" the drug crime, his reliance upon *Bailey* and *King*'s pronouncements regarding what conduct constitutes "use" is simply inapposite. *See United States v. Lopez-Garcia*, 565 F.3d 1306, 1321–22 (11th Cir. 2009). Tannehill has failed to show either deficient performance or prejudice on these claims.

### 3.    Ineffective Assistance on Direct Appeal

Tannehill also contends that counsel was ineffective on direct appeal. He first says that counsel was ineffective because he "deliberately failed [to] raise[] issues of importance as requested by [Tannehill]." However, Tannehill does not identify what those issues are. Assuming that Tannehill is referring to the claims he raises in his § 2255 motion, those claims are without merit, for the reasons stated herein. Counsel is not ineffective for failing to raise meritless issues. *Owen v. Secretary for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009).

Tannehill further complains that counsel failed to file a "traverse" or "reply brief" in the Eleventh Circuit after the government filed its brief as the appellee. (Civ. Doc. 1, ¶ 12(D)). But Tannehill fails to explain how filing a reply brief might have made even a conceivable difference in the outcome of his direct appeal. Tannehill thus cannot demonstrate prejudice under *Strickland*. Tannehill insists, though, that counsel's failure to file a reply brief as instructed is akin to a failure of an attorney to appeal *at all* as instructed and is governed by *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). In that case, the Supreme Court recognized that an attorney's performance is *per se* deficient if he fails to appeal when the defendant specifically requests an appeal to be filed. *Id.* at 477. Prejudice on such a claim is established by showing that there is a reasonable probability a timely

appeal would have been filed absent the deficiency, even if the defendant fails to identify a meritorious issue on appeal. *Id.* at 484–85. However, failure to file a reply brief is nothing like failing to file a notice of appeal because the failure to file a reply brief does not deprive the defendant of the benefit of the appellate proceeding. *Flores-Ortega* does not govern here; *Strickland* does. *See McCoff v. Florida*, 2011 WL 4389779, *20 (M.D. Fla. 2011); *Gonzales v. United States*, 2010 WL 4942967, *11 (S.D. Fla. 2010) (both applying *Strickland* to such claims); *cf. United States v. Spielvogel*, 264 Fed. App'x 823, 825 (11th Cir. 2008) (Carnes, J., concurring) ("The rule in [*Flores-Ortega*] does not apply to an appeal in which some but not all possible issues are raised. It applies to the failure to file an appeal from the judgment and raise any issue at all."); *United States v. Birtle*, 792 F.2d 846, 847–48 (9th Cir. 1986) (no *per se* prejudice when defendant's appellate counsel failed to appear at oral argument or file a reply brief). Because Tannehill fails to establish prejudice under *Strickland*, these claims are due to be denied.

### D.   "Uncharged 404(b)" Evidence

In his amended § 2255 motion, Tannehill claims that this court erred in allowing informants Jesse and Angela Davis "to testify before a jury [about] uncharged and uncorroborated other bad acts." (Civ. Doc. 8 at 2). This "uncharged 404(b) evidence," he contends, "was prejudicial because it invited the jury to think Petitioner had a propensity of dealing with drugs and firearms." (*Id.*) The court understands Tannehill to be referring to Rule 404(b) of the Federal Rules of Evidence, which provides in relevant part:

(b) Crimes, Wrongs, or Other Acts.

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

28

> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

He further argues that the probative value of any testimony that was admissible under Rule 404 was still substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403.

Tannehill's claim has several fatal flaws.  First, although he identifies Angela and Jesse Davis as the witnesses providing the testimony that was allegedly improperly admitted, Tannehill fails to state specifically what testimony he is complaining about.  Under the heightened pleading requirements applicable to § 2255 motions, it is not enough for him simply to identify witnesses. Second, this issue could have been raised on direct appeal but was not.  Accordingly, it is subject to the procedural default doctrine, which would generally bar review.  *See Bousley v. United States*, 523 U.S. 614, 621 (1998).  Third, Tannehill has not established that the admission of the evidence he is complaining about, whatever it is, violated his *constitutional* rights, rather than just an evidentiary rule.  Non-constitutional claims will not be heard in a § 2255 motion unless they result in a complete miscarriage of justice. *Lynn v. United States*, 365 F.3d 1225, 1332–33 (11th Cir. 2004).  Tannehill's general allegations do not come close to making that showing.

The court also notes that it does not interpret Tannehill's filings, even liberally construed, to assert any claim alleging ineffective assistance of counsel for failing to raise an objection based on Rule 404(b) or a failure to raise the same issue on direct appeal.  But even construing this claim as one so arising under the Sixth Amendment, which could excuse the procedural default, *see Bousley*, 523 U.S. at 621, Tannehill's failure to identify the specific evidence that allegedly should

29

have been objected to means that he has failed to show either deficient performance or prejudice under *Strickland*.  This claim is due to be denied.

### E.    Violation of Rule 615 of the Federal Rules of Evidence

Tannehill also claims that the "Government was in violation of Fed. R. Crim. P. 615" because two individuals, Donald Bennett and Darren Gayne, were testifying witnesses but were allowed to remain in the courtroom during the testimony of prior witnesses for the government.  The court understands Tannehill to be basing this claim not on the Federal Rules of Criminal Procedure, which have no "Rule 615," but rather upon Rule 615 of the Federal Rules of Evidence.  That rule provides that witnesses may be excluded from the courtroom while a trial is ongoing so that they cannot hear the testimony of other witnesses.[10]  The reason for the rule is obvious-to prevent witnesses from " 'tailoring' their testimony to that of earlier witnesses" and to "aid[ ] in detecting testimony that is less than candid." *United States v. Edwards*, 526 F.3d 747, 757 (11th Cir. 2008) (quoting *Geders v. United States*, 425 U.S. 80, 87 (1976)).

This claim suffers from some of the same defects that plague Tannehill's claim based upon the admission of Rule 404(b) evidence.  This claim could have been raised on direct appeal but was not, so it is procedurally defaulted.  It is also not a claim of constitutional dimension and is thus not cognizable in a § 2255 motion under *Lynn*, 365 F.3d at 1332–33.

---

[10] Rule 615 provides as follows:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a person authorized by statute to be present.

30

Further, even if construed as a claim of ineffective assistance of counsel based on the failure to raise the alleged violation, Tannehill's allegations do not establish that there is a reasonable probability that the outcome of his trial would have been different.  Even if Bennett was improperly in the courtroom for Agent English's testimony, Bennett merely testified that he received the evidence obtained in the search and sent it to a crime laboratory for processing.  His testimony spans only eight pages of trial transcript.  Likewise, even if Gayne was in the courtroom for the testimony of Agent English and Bennett, Gayne testified that he was a forensic chemist at the crime lab and analyzed the drug evidence obtained in the search.  There is nothing to suggest that either Bennett or Gayne's testimony was influenced by, or affected that of, other witnesses.  *See United States v. Jimenez*, 780 F.2d 975, 980 (11th Cir. 1986).  There is no prejudice under *Strickland* from any failure to object to a violation of Rule 615 that might have occurred, especially given the abundant evidence of Tannehill's guilt.  *See Simmons v. United States*, 2011 WL 1527062, *3 (E.D. Wis. 2011).  This claim is due to be denied.

### F.    Consecutive Sentence

Tannehill next contends that because the court sentenced him to a five-year sentence mandatory minimum consecutive sentence on top of his 235-month sentence, the sentence is, in essence, a violation of *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008).  The contested statutory provision, 18 U.S.C. § 924 (c)(1)(A)(i), reads in relevant part as follows:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by another provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime...uses or carries a firearm or who, in furtherance of any such crime, possesses a firearm shall, in addition to the punishment provided for such crime of violence or drug trafficking crime be sentenced to a term of imprisonment of not less than 5 years.

The *Whitley* court goes into a great deal of explanation about why the "except" clause nullifies the five-year mandatory minimum term of imprisonment that Congress was careful to enact.

However, this claim could have been raised on direct appeal but was not. It is also an alleged statutory error, not a constitutional error. But more to the point, the Eleventh Circuit, like all other circuits to consider the issue, has rejected *Whitley*. *See United States v. Segarra*, 582 F.3d 1269, 1272–73 (11th Cir. 2009). This claim is without merit, even if it were not procedurally defaulted.

### G.    Improper Sentence Based on a "Flawed" PSR

Finally, Tannehill raises a claim that the court erred in sentencing him "utilizing an incorrect [Presentence Investigation Report]" and should have applied Amendment 709 to the sentencing guidelines and that trial counsel was ineffective for failing to raise the error. This claim is due to be denied on several grounds.

First, it is untimely filed. As the government argues, it was added by an amendment filed about six months outside the one-year limitations period established by 28 U.S.C. § 2255(f). Tannehill argues that the claim relates back under Rule 15(c), Fed. R. Civ. P., but the claim does not arise from the same core of operative facts as any claim asserted within the limitations period. For the relation-back doctrine to apply, it is not enough to say, as Tannehill does, that this claim is based on ineffective assistance of counsel and so were other, timely claims. *See Mayle v. Felix*, 545 U.S. 644 (2005). Second, the substantive claim is barred because it could have been raised on direct appeal but was not, so it is procedurally defaulted. *Lynn*, 365 F.3d at 1332–33. It is also non-constitutional in nature, and thus not cognizable in a § 2255 proceeding. *Id.*

The claim is also without merit. In his Second Amended Motion, Tannehill complains that the court erred in sentencing him to an "enhanced sentence utilizing an incorrect P.S.R." (Civ. Doc.

23 at 1-3).  However, in the court's Memorandum of Decision Regarding Order Denying Motion to

Reduce Term of Imprisonment, this the court specifically recognized that Tannehill:

> was sentenced after the effective date of the Crack Amendment using the computation of his base offense level of 33. Therefore, his sentence was not based on a guideline that has subsequently been lowered by an amendment to the guidelines as required to trigger 18 U.S.C. §3582(c).  The court notes, however, that even if Petitioner had been sentence prior to the effective date of the amendments, he would not have been entitled to a reduction in sentence since he was determined to be an armed career criminal pursuant to 18 U.S.C. §924(e). *United States v. Thomas*, 545 F.3d 1300 (11th Cir. 2008). Petitioner's argument for removal of the Armed Career Criminal Act title from his sentences is without merit and due to be denied.

(Crim. Doc. 86 at 4).  Thus, this claim has no merit, whether it is construed as a substantive claim

or as one alleging ineffective assistance of counsel.

## III.    CONCLUSION

Based on the foregoing, Tannehill's § 2255 motion is due to be denied.  A separate final

order will be entered.

DONE and ORDERED this _____28th_____ day of March, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE